In December 1995, defendant-employer offered plaintiff a meter reader position. Transcript of the Evidence at 69 (hereafter "Tr. at __"). Dr. Hicks reviewed the written description of the job duties to determine whether they fit plaintiff's limitations. Deposition of Dr. Hicks at 13 (hereafter H. Depo. at __). Dr. Hicks approved and signed the Job Analysis Form on December 11, 1995. T Ex. at 177-78. Dr. Hicks discussed the trial return to work with plaintiff. However, plaintiff advised Dr. Hicks that he considered returning to school or would like his old job with restrictions or some other job besides meter reader. H. Depo. at 12-13, Tr. at 51-52. Subsequently, plaintiff's pain complaints increased including hypesthesia following no specific nerve pattern and strong positive Waddell's signs, which suggested symptom magnification to Dr. Hicks. H. Depo. at 14, 15. In January 1996, Dr. Hicks performed a second Pentothal pain study and concluded that plaintiff's pain was non-physiogenic. H. Depo. at 16.
On February 7, 1996, plaintiff began working four-hour days for two weeks as a meter reader for defendant-employer. Tr. at 18. This job required plaintiff to intermittently sit, stand and walk for varying periods of time as he went about his duties.Id. Dr. Hicks testified that this type of job was the best position for plaintiff's condition. H. Depo. at 36-37. He found no difficulty in plaintiff getting in and out of a vehicle and walking. H. Depo. at 29-30. Plaintiff performed this job for approximately seven and one-half days. Tr. at 20.
On February 19, 1996, without authorization (Tr. at 57), plaintiff consulted Dr. Rodger, whom he last saw approximately two years before. Deposition of Dr. Rodger at 24 (hereafter R. Depo. at __). Dr. Rodger, without benefit of Dr. Hicks' records and relying solely on the medical history related by plaintiff, suggested a course of anti-inflammatory drug injection treatment with follow up through Dr. Grobler. R. Depo. at 22-24, 33-34.
On February 22, 1996, plaintiff saw Dr. Hicks and requested his signature on an I.C. Form 28U that would authorize plaintiff to discontinue his trial return to work as a meter reader. H. Depo. at 18. Dr. Hicks found no medical basis for plaintiff's request and, as plaintiff's authorized treating physician, refused to sign the Form. Id. That same day, plaintiff later presented Form 28U to Dr. Rodger, who signed it, again without reviewing any records from Dr. Hicks. R. Depo. at 24, 33, 37, 40. Dr. Rodger simply relied on plaintiff's word that he could not do the job. R. Depo. at 40. Dr. Rodger admitted that he based his opinion upon "supposition and guesswork" and that he did not have a detailed description of plaintiff's actual job or the results of the Functional Capacity Evaluation, nor did he even discuss the specifics of the job with plaintiff. R. Depo. at 39-41. He testified that he was not aware of the ramifications of signing Form 28U, nor was he in a position to offer a competent medical opinion on plaintiff's physical capabilities or his ability to perform the job in question. R. Depo. at 41. Dr. Rodger also testified that had he known about the positive Waddell's sign before he examined plaintiff, he would have found it "of concern" to him. R. Depo. at 45-46.
In the case at bar, employer-defendant offered plaintiff a suitable job for his age, education, physical limitations, vocational skills and experience. Plaintiff's authorized treating physician evaluated and approved the job. Plaintiff has made no showing that his total disability has continued. Therefore, plaintiff has unjustifiably refused to perform the proffered job, thus rendering him ineligible to receive further total disability benefits. N.C. Gen. Stat. § 97-32.
Dr. Hicks, plaintiff's authorized treating physician, was in the best position to determine whether plaintiff was capable of performing the meter reader job. The majority, without supporting clinical or testimonial evidence, finds that Drs. Rodgers and Grobler were most effective in treating plaintiff's medical problems, despite the overwhelming evidence to the contrary. Dr. Rodger testified that he based his testimony solely on plaintiff's subjective persuasiveness and minor symptomatic relief after Dr. Grobler injected him with anti-inflammatory drugs. Rodgers Depo. at 33-34. As set forth supra, Dr. Rodgers testified that he did not know the significance of the form he was signing and might have thought differently if he had complete information.
The majority gives "no weight" to Dr. Hicks' testimony and medical records due to the alleged "appearance of undue influence." Dr. Hicks testified that he has private conversations with rehabilitation nurses frequently and he may have talked with Ms. Lipscomb, a rehabilitation nurse, on the day in question. H. Depo. at 19. Plaintiff established no evidence through cross-examination of Dr. Hicks or otherwise, on how Dr. Hicks' failure to sign the Form 28U was based on any alleged inducement or misinformation provided by Ms. Lipscomb. Dr. Hicks' sworn testimony was that he refused to sign the Form 28U because he had no medical reason for keeping plaintiff out of work, not because of any conversation he may have had with the rehabilitation nurse. H. Depo. at 20 (emphasis added).
Dr. Hicks is a board certified orthopedic surgeon who has practiced medicine in North Carolina for over 30 years. H. Depo. at 5. He testified under oath that his medical opinion was that plaintiff is capable of performing the meter reading job. H. Depo. at 20. Dr. Hicks offered ample objective evidence to support his opinion and plaintiff failed to produce any evidence to the contrary. Dr. Rodgers, who was not plaintiff's authorized treating physician and to whom the majority gives great weight, testified under oath that his opinion was based on "supposition and guesswork." R. Depo. at 39. Dr. Rodger admitted that plaintiff only came to him because he was "looking for somebody else to help him" get his form signed in February 1996. R. Depo. at 33.
The Deputy Commissioner's decision denying plaintiff further benefits for total disability was based on the competent evidence of record and should, therefore, be affirmed.
This 29th day of May 1998.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
DCS/jlr